UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(b)**

**BIELLI & KLAUDER, LLC**
Angela L. Mastrangelo, Esquire (No. 239652019)
Thomas D. Bielli, Esquire (*pro hac vice*)
Bielli & Klauder, LLC
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 642-8271
Email: mastrangelo@bk-legal.com
Email: tbielli@bk-legal.com
*Counsel to Sasha Richard Kissoondath*

In re:

Sasha Richard Kissoondath,

                                     Debtor.

Case No.:   25-11426

Honorable Jerrold N. Poslusny, Jr.

Chapter 11 (Subchapter V Small Business)

## <u>SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION</u>

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Sasha Richard Kissoondath, the Debtor, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY JUNE 11, 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY JUNE 11, 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME). THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: ANGELA L. MASTRANGELO, ESQUIRE, BIELLI & KLAUDER, LLC, 1905 SPRUCE STREET, PHILADELPHIA, PA. 19103.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR JUNE 24, 2025 AT 10:00 A.M. (PREVAILING EASTERN TIME) IN COURTROOM  No. 4C AT THE U.S. BANKRUPTCY COURT, DISTRICT OF NEW JERSEY, 400 COOPER**

**STREET, 4TH FLOOR CAMDEN, N.J. 08101.**

      Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

**BIELLI & KLAUDER, LLC**

Dated: May 13, 2025          By: _/s/ Angela L. Mastrangelo_
                    Angela L. Mastrangelo, Esquire (No. 239652019)
                    Thomas D. Bielli, Esquire (_pro hac vice_)
                    1905 Spruce Street
                    Philadelphia, PA 19103
                    Telephone: (215) 642-8271
                    Email: mastrangelo@bk-legal.com
                    Email: tbielli@bk-legal.com
                    _Counsel to Debtor, Sasha Richard Kissoondath_

# TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS...................................................1

ARTICLE 1 HISTORY OF THE DEBTOR AND BUSINESS OPERATIONS ............................1

1.1.    Nature of the Debtor and his Businesses. ..................................................1

1.2.    History of Business Operations of the Debtor ..........................................2

1.3     Filing of the Debtor's Chapter 11 Case. ..................................................2

1.4.    Legal Structure and Ownership. ..............................................................2

1.5.    Debtor's Asset. ........................................................................................2

1.6.    Debtor's Liabilities. ................................................................................3

1.7.    Current and Historical Financial Conditions...........................................3

1.8.    Events Leading to the Filing of the Bankruptcy Case. ............................4

1.9.    Significant Events During the Bankruptcy Case......................................4

1.10    Projected Recovery of Avoidable Transfers............................................4

ARTICLE 2 THE PLAN...............................................................................................5

2.1     Unclassified Claims. ...............................................................................5
A.      Administrative Expenses ........................................................................5
B.      Priority Tax Claims.................................................................................6

2.2.    Classes of Claims and Equity Interests. ..................................................6
A.      Classes of Secured Claims......................................................................6
B.      Classes of Priority Unsecured Claims. ...................................................8
C.      Classes of General Unsecured Claims ....................................................8
D.      Classes of Equity Interest Holders. ........................................................8

2.3     Estimated Number and Amount of Claims Objections.............................8

2.4     Treatment of Executory Contracts and Unexpired Leases........................9

2.5.    Means for Implementation of the Plan. .................................................10

2.6     Payments................................................................................................10

2.7.    Post-Confirmation Management. ..........................................................11

2.8     Tax Consequences of the Plan...............................................................11

2.9.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.........11

ARTICLE 3 FEASIBILITY OF PLAN..........................................................................11

3.1.    Ability to Initially Fund Plan. ..............................................................11

3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization ............11

ARTICLE 4 LIQUIDATION ANALYSIS .......................................................................12

ARTICLE 5 DISCHARGE...........................................................................................12

1

5.1    11 U.S.C. § 1141(d)(3) Not Applicable ........................................................................12

5.2    Automatic Stay to Remain in Effect During Plan Repayment Period ......................................12

ARTICLE 6 GENERAL PROVISIONS ........................................................................................13

6.1    Title to Assets. ........................................................................................................13

6.2    Binding Effect..........................................................................................................13

6.3    Severability. ............................................................................................................13

6.4    Retention of Jurisdiction by the Bankruptcy Court. ....................................................13

6.5    Captions. .................................................................................................................14

6.6    Modification of Plan. .................................................................................................14

6.7    Final Decree.............................................................................................................14

ARTICLE 7 ATTACHMENTS........................................................................................................14

ARTICLE 8 FREQUENTLY ASKED QUESTIONS............................................................................15

ARTICLE 9 DEFINITIONS............................................................................................................16

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

Sasha Richard Kissoondath (the "**Debtor**") is an adult individual and owner of KIMO Tile @ Marble, LLC d/b/a KIMO Tile LLC ("**KIMO**"). The Debtor is also a Transportation Security Officer with the Department of Homeland Security. The Debtor has aggregate noncontingent liquidated secured and unsecured debts as of the Petition Date (defined herein below) in an amount not more than $3,024,725.

This plan (the "**Plan**") will be funded through the Debtor's disposable income during the life of the plan. Estimated recoveries under the Plan are:

| Description | Anticipated Recovery |
|---|---|
| Administrative Claims – Unclassified | 100% |
| Priority Tax Claims – Unclassified | 100% |
| Secured Claims – Class 1 | Approximately 32% |
| Secured Claims – Class 2 | Approximately 90% |
| Secured Claims – Class 3 | Approximately 10% |
| Unsecured Priority Claims – Class 4 | 100% |
| General Unsecured Claims – Class 5 | Approximately .015% |
| Equity Interests – Class 6 | 0% |

## ARTICLE 1
## HISTORY OF THE DEBTOR AND BUSINESS OPERATIONS

### 1.1.    Nature of the Debtor and his Business.

The Debtor is an adult individual and business owner. The Debtor formed KIMO, a privately owned New Jersey limited liability company. KIMO was formed in March of 2014. KIMO is a ceramic and marble tile contractor. On or about October 9, 2024, KIMO filed a voluntary petition for relief under Subchapter V of the Bankruptcy Code ("**KIMO Bankruptcy**") in the United States Bankruptcy Court for the District of New Jersey, case number 24-20009(JNP).

Prior to the commencement of the KIMO Bankruptcy, KIMO was engaged in disputes with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local No. 7 of the International Union of Bricklayers and Allied Craftworker (the "**Union**") and the Trustees of the Local 7 Title Industry Welfare Fund Trustees of the Local 7 Tile Industry Annuity Fund; Trustees of the Tile Layers Local Union 52 Pension Fund; Trustees of the Local 7 Tile Industry Retiree

Welfare Fund; Trustees of the Local 7 Tile Industry Vacation Fund; Trustees of the Local 7 Tile Industry Supplemental Fund; Trustees of the Local 7 Tile Industry Promotional Fund; and Trustees of the Local 7 Tile Industry Training Fund (the "**Benefit Funds**").

### 1.2.    History of Business Operations of the Debtor

The Debtor has spent eleven (11) years managing KIMO. In 2018, KIMO fell behind on payments to the Benefit Funds. A settlement was entered into between KIMO, the Debtor and the Benefit Funds with respect to those obligations (the "**Benefit Fund Settlement**"), and KIMO was making payments until sometime in late 2024. KIMO fell behind on the Benefit Fund Settlement, and subsequently defaulted on the Benefit Fund Settlement.

Again in 2024, KIMO fell behind on current obligations to the Benefit Funds, which was caused by a lack of cash flow occurring after communications by the Union and the Benefit Funds with KIMO's contract parties to collect on the defaulted Benefit Fund Settlement. The Benefit Funds instituted suit in the State of New York against KIMO and the Debtor seeking to recover payments under the defaulted Benefit Fund Settlement and to determine the amount owed and to enforce the Benefit Fund Settlement.

In addition, KIMO has claims under Section 542 of the Bankruptcy Code to recover trust fund moneys totaling approximately $545,000.00 owed to KIMO.

For the last three (3) years, the Debtor has also been employed by the Department of Homeland Security.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On February 12, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under subchapter V of the Bankruptcy Code.

### 1.4.    Legal Structure and Ownership.

The Debtor is an individual and the member of KIMO, a Limited Liability Company organized under the law of the State of New Jersey.

### 1.5.    Debtor's Asset.

The Debtor's assets are set forth in **Exhibit A**, and a summary of his assets is as follows:

A.    The Debtor's membership interest is KIMO is valued at $0. KIMO is a small business with limited supplies and equipment stored at the Debtor's residence.

B.    The Debtor resides at and owns real property located at 7 Fowler Avenue, Millville, NJ. 08332.

The assets available for distribution under this Plan are as follows: (1) Debtor's disposable

income over the life of the Plan; (2) rental payment from the property located at 7 Fowler Avenue, Millville, NJ. 08332; (3) payments to certain creditors from the KIMO Bankruptcy; (4) payments from the proceeds of the sale of the 7 Fowler Avenue, Millville, NJ. 08332; and (5) the any causes of action the Debtor may bring.

### 1.6. <u>Debtor's Liabilities.</u>

**Secured Claims:** As of the Petition Date, the Debtor was aware that the IRS and Benefit Funds asserted liens against the property of the Debtor. Below is a summary of the secured claims filed in the Debtor's case.

| Claimant | Collateral | Total Amount Outstanding | Secured Obligor | Unsecured Obligor |
|---|---|---|---|---|
| IRS, proof of claim 2 | Lien pursuant to 26 U.S.C § 6321 on the Debtor's residence located at 7 Fowler Ave., Millville, NJ 08332 | $203,205.48 | Debtor | |
| Benefit Funds, proof of claim 4 | Superior Court of New Jersey, Cumberland County judgment lien J008562-25 entered twenty (20) days prior to the Petition Date | $658,683.18 | Debtor | Debtor and KIMO |
| State of New Jersey – Division of Taxation, amended proof of claim 7 | Lien on the Debtor's residence located at 7 Fowler Ave., Millville, NJ. 08332 | $5,513.05 | Debtor | |

**Priority Claims**: The Debtor does not believe it has any other priority creditors other than those listed below:

| Claimant | Total Amount Outstanding | Basis for Priority |
|---|---|---|
| IRS, proof of claim 2 | $6,315.98 | 11 U.S.C. § 507(a)(8) for prepetition estimated taxes for the years 2022 - 2024 |
| State of New Jersey, amended proof of claim 7 | $64,682.70 | 11 U.S.C. § 507(a)(8) for delinquent taxes for 2021-2024, relating income and sales and use tax, including fees for underpayment and recovery fees. |

**Unsecured Claims**: The Debtor's unsecured creditors include disputed business debts. In addition, the unsecured creditors also include the litigation claims of the Trustees of the Local 7 Title Industry Benefit Funds, which remain unliquidated, contingent and disputed.

On March 10, 2025, the Debtor filed Schedule E/F Creditors Who Have Unsecured Claims [D.I. 20].

### 1.7. <u>Current and Historical Financial Conditions.</u>

The Debtor's financial condition was impacted by the decline in KIMO's financial condition in 2017. KIMO was unable to make payments to the Benefit Funds, resulting in the Benefit Funds Settlement. However, after consistently paying for years, KIMO defaulted on the Benefit Funds Settlement, and had underreported current wages. Subsequent to the KIMO Bankruptcy, KIMO faced challenges due to conflicts with the Union and Benefit Funds, and receives workers sporadically from the Union.

KIMO's financial condition negatively impacts the Debtor's financial condition.

**1.8.    Events Leading to the Filing of the Bankruptcy Case.**

The Debtor filed the instant case as a result of the disputes between KIMO and the Benefit Funds, Union, and IRS, and the Benefit Funds' Litigation against the Debtor.  KIMO filed its bankruptcy on October 9, 2024, and the Debtor commenced this case on February 12, 2025, and the Office of United States appointed Doug Stanger, Esquire as the Subchapter V Trustee.

**1.9.    Significant Events During the Bankruptcy Case.**

The Debtor commenced this case on February 12, 2025, and the Office of the United States Trustee appointed Dough Stanger as the Subchapter V Trustee.

The Debtor filed an application for retention of professionals.  By an order dated March 7, 2025, the Court approved the Debtor's retention of Bielli & Klauder LLC as Counsel to the Debtor [D.I. 18].

The Debtor filed his Small Business Plan of Reorganization ("**Plan**") on **May 13, 2025**.

The Debtor has been focusing on a resolution of the disputes with the Benefit Funds, Union, and the IRS.  He has also been reviewing his operations and pricing, reducing expenses and improving operations and profitability of KIMO, and obtaining sufficient union workers for continued operations of KIMO.

On May 9, 2025, the Benefit Funds and Union commenced an action against the Debtor by filing an adversary complaint to determine that specific debt is nondischargable pursuant to 11 U.S.C. §§ 523 (a)(2), (4) and (6).  The case is captioned as *Trustees of the Local 7 Tile Industry Welfare Fund, et al., v. Sasha Richard Kissoondath*, case number 25-01197-JNP.  The Debtor believes he has a complete defense to the claims set forth in the adversary proceeding.

**1.10    Projected Recovery of Avoidable Transfers**

The Debtor is continuing to investigate prepetition transactions. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

After a preliminary investigation, however, it does not appear that the estate has any Avoidance Actions that would yield a material recovery.  Should the Debtor pursue any Avoidance Action based on prepetition transactions, all proceeds will be dedicated to the payment of clams

in this Chapter 11 Case.

# ARTICLE 2
# THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices

and terms between the Debtor and its trade Creditors.

2.     If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.     Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The Debtor's estimated unpaid Administrative Expenses at confirmation, depending on the timing of that, include:

| Expense | Estimated | Proposed Treatment |
|---|---|---|
| Professional Fees and Expenses for Debtor's counsel | $50,000 | After Bankruptcy Court Approval, paid in full on the later of (i) Effective Date of the Plan, or (ii) upon terms agreeable to the parties. |
| Professional Fees and Expenses (Subchapter V Trustee) | $7,500 | Paid in full on the Effective Date. |
| Clerk's Office Fees | $0.00 | |
| **Total:** | $57,500 | |

B.     Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  All Priority Tax Claims have been paid as they have become due. Any accrued balances as of the Effective Date will be paid in full.

The IRS filed a Proof of Claim asserting a Priority Tax Claim under 11 U.S.C. § 507(a)(8) in the amount of $6,315.98.  The State of New Jersey – Division of Taxation filed a Proof of Claim asserting a Priority Tax Claim under 11 U.S.C. § 507(a)(8) in the amount of $64,682.70.  The Debtor does not believe it has any other priority creditors.

## 2.2.    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.     Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy

6

estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of: <br>• IRS <br>• Debtor's Residence <br>• Collateral Value: $410,000 <br>• Lien 26 U.S.C § 6321 <br>• Total Claim: $203,205.48 <br>• Proof of Claim #2 | NO | YES | Debtor shall make a lump sum payment of $70,000 from the net proceeds of the sale of the Debtor's residence, on or before the third anniversary of the Effective Date of the Plan. |
| 2 | Secured Claim of: <br>• State of New Jersey – Division of Taxation <br>• Lien - Debtor's Residence <br>• Collateral Value: $410,000 <br>• Total Claim: $5,513.05 <br>• Proof of Claim #7 | NO | YES | Debtor shall make a lump sum payment of $5,000 from the net proceeds of the sale of the Debtor's residence, on or before the third anniversary of the Effective Date of the Plan. |
| 3 | Secured Claim of: <br>• Benefit Funds <br>• Debtor's Residence <br>• Collateral Value: $410,000 <br>• Judgment lien obtained 20 days prior to the Petition Date <br>• Total Claim: $658,683.18 <br>Proof of Claim #4 | NO | YES | Debtor shall make a lump sum payment of $70,000 from the net proceeds of the sale of the Debtor's residence, on or before the third anniversary of the Effective Date of the Plan, and any deficiency claim shall be treated as a general unsecured creditor and receive payments pursuant to Class 6. Benefit Funds shall also receive payments from KIMO pursuant to KIMO's plan. |

B.      Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | Priority unsecured claim | Unimpaired | Paid in full on the Effective Date. |

C.      Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed  treatment  of  Class[es] through , which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 5 | Allowed General Unsecured Class estimated to be $2,600,000*<br><br>*includes the deficiency claim of Benefit Funds. | Impaired | Quarterly Pmt = $170.00<br>Balloon Pmt = $15,000<br>Total Pmts = $21,000<br>Pmts Begin = 2025<br>Pmts End = 2028<br>Interest rate % = n/a<br>Estimated percent of claim paid = .01% |

D.      Classes of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder. In this Plan, the Debtor is an individual and is the Equity Interest Holder.  All property of the Estate shall re-vest in the Debtor upon grant of discharge.

**2.3    <u>Estimated Number and Amount of Claims Objections.</u>**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
|  |  |  |

Claim Objections: TBD

### 2.4    <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intention regarding their Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit B**  shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  **Exhibit <u>B</u>** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[  ]  Assumption and Assignment of Executory Contracts and Unexpired Leases

The Executory Contracts shown on Exhibit ____  shall be assumed by the Debtor and assigned to the party listed in that Exhibit.  Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory

contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[  ] Rejection of Executory Contracts and Unexpired Leases,

The Executory Contracts shown on Exhibit ____ shall be rejected by the Debtor. Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit ____, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline For Filing A Proof Of Claim Based On A Claim Arising From The Rejection Of An Executory Contract Is The Date That Is Thirty (30) Days After The Date This Plan Becomes Effective**. Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### 2.5. <u>Means for Implementation of the Plan.</u>

The Debtor will contribute disposable income over the course of the Plan to pay claims over the next 36 months in order to make all Distributions to holders of allowed Class 5 Claims as and when required.

In addition, the Debtor will be filing an application to retain a realtor for the purpose of obtaining a renter for the property located at 7 Fowler Avenue, Millville, NJ. 08332 and sale of the property on or before the fourth anniversary of the Effective Date of the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expect to have sufficient cash on hand though the Plan in order to Make the payment required on the Effective Date.

### 2.6 <u>Payments.</u>

If the Plan is confirmed under § 1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to § 1194(a) of the Bankruptcy Code. Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan

or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7. **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

As the Debtor is an individual, the Debtor will remain in control of managing his business activities and affairs after Confirmation of the Plan.

### 2.8 **Tax Consequences of the Plan.**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: [List the following general consequences as a minimum: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on Creditors of any discharge, and the general tax consequences of receipt of Plan consideration after Confirmation.]

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in **Exhibit C**.

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. **Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.   Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit D.

Pursuant to D.N.J. LBR 3020-1, the Effective Date of the Plan shall be the later of (i) 30 days after the Bankruptcy Court's entry of an Order confirming the Plan, or (2) August 1, 2023. The Debtor shall file a *Notice of Occurrence of Effective Date* with the Bankruptcy Court.

### 3.2. **Ability to Make Future Plan Payments And Operate Without Further**

**Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit C** (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $178,500. The final Plan payment is expected to be paid on August 30, 2027.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

### ARTICLE 4
### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit E.**

### ARTICLE 5
### DISCHARGE

**5.1     11 U.S.C. § 1141(d)(3) Not Applicable**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**5.2     Automatic Stay to Remain in Effect During Plan Repayment Period**

Pursuant to 11 U.S.C. § 362(c), the protections of the automatic stay shall remain in full force and effect during the 36-month Plan repayment period set forth herein. These protections include, inter alia, a prohibition on the commencement, continuation, or enforcement of any proceedings against the Debtor or property of the Debtor's estate, that could have been brought prior to the Petition Date.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquire, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in

favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5    Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6    Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a) of the Bankruptcy Code. However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Debtor may not seek to modify the Plan after the Effective Date of the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7    Final Decree.**

Once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**
**ATTACHMENTS**

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[]      Debtor's Assets at Fair Market Value, annexed as Exhibit____.
[]      Debtor's Liabilities, annexed as Exhibit ___.
[]      Financial forecast for the Debtor, annexed as Exhibit ___.
[ ]     Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.
[X]     Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibits F and G.
[ ]     Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

14

[ ]     Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit __.

[ ]     Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]     Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit __.

[X]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit D.

[X]    Liquidation Analysis, annexed as Exhibit E.

# ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, Debtor may propose a liquidating plan or plan of distribution (if substantially all assets have already been liquidated) under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a Debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization or liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.3 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.3 of the Plan identifies the classes of creditors whose claims are impaired.  If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is_____, 2025 at 5 p.m.. Ballots should be mailed to the following address:

Angela L. Mastrangelo, Esquire
BIELLI & KLAUDER, LLC
1905 Spruce Street
Philadelphia, PA 19103

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.3, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

### ARTICLE 9
### DEFINITIONS

9.1    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.  The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

**9.2    Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3    Administrative Claims Bar Date**: The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date. For the further avoidance of doubt, the Claims Bar Date for section 503(b)(9) Claims was the General Claims Bar Date.

**9.4    Administrative Convenience Class:** A class consisting of every unsecured claim

that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.5    Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under § 507(a)(2) of the Bankruptcy Code and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petitions by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.6    Administrative Tax Claim**: Any tax incurred pursuant to § 503(b)(1)(B) of the Bankruptcy Code.

**9.7    Allowed Claim**: Any claim against the Debtor pursuant to § 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.8    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.9    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code.

**9.10    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.11    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.12    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey. Delaware.

**9.13    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.14    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation,  readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

17

**9.15    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Sasha Richard Kissoondath is the Debtor-in-Possession.

**9.16    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.17    Claim Objection Deadline**: Subject to extension, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**9.18    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.19    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.20    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.21    Confirmation Hearing**: The hearing to be held on June 24, 2025 to consider confirmation of the Plan.

**9.22    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.23    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.24    Debtor** and **Debtor-in-Possession**: Sasha Richard Kissoondath the debtor-in-possession in this Chapter 11 Case.

**9.25    Disputed Claim:** Any claim against the Debtor pursuant to § 502 of the Bankruptcy Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.26    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.27    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

18

**9.28    Equity Interest**: An ownership interest in the Debtor.

**9.29    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.30    Final Order**: An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 cases that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.31    IRC**: The Internal Revenue Code.

**9.32    General Claims Bar Date**: April 23, 2025.

**9.33    Governmental Claims Bar Date**: August 11, 2025.

**9.34    Petition Date**: February 12, 2025, the date the chapter 11 petition for relief was filed.

**9.35    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.36    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.37    Reorganized Debtor.** The Debtor after the Effective Date.

**9.38    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.39    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.40    Subchapter V Trustee**: Dough Stanger, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.41    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

Dated:  May 13, 2025                    By: */s/ Angela L. Mastrangelo*
                                       Angela L. Mastrangelo
                                       Bielli & Klauder, LLC
                                       1905 Spruce Street
                                       Philadelphia, PA. 19103
                                       *Counsel to the Debtor*

19

**EXHIBIT A**
**DEBTOR'S ASSETS**

Debtor's Schedule A/B filed with the court

**EXHIBIT B**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**

New Jersey Motor Vehicle Lease Agreement
Vehicle: 2024 Tesla, Model Y
Dated: May 2, 2024
Lease Term: 36 Months
Lessor:   Santander Consumer USA
            d/b/a Chrysler Capital as servicer for CCAP Auto Lease Ltd.
            P.O. Box 961245
            Fort Worth, TX 76161

**EXHIBIT C**

**Debtor's 36 Month Projections**

**EXHIBIT D**
**DEBTOR'S CASH ON HAND**

**EXHIBIT E**
**LIQUIDATION ANALYSIS**

**EXHIBIT F & G**
**DEBTOR'S MOST RECENT MONTHLY OPERATING REPORTS**